**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KATHLEEN A. BROWNING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10 cv 7129 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of the | ) | Judge Sharon Johnson Coleman |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### Memorandum Opinion and Order

Plaintiff, Kathleen Browning, moves for summary judgment seeking reversal of the Commissioner's final decision denying her disability benefits under Title II of the Social Security Act, 42 U.S.C. §401-431, and an order directing the Commissioner to award disability benefits to Ms. Browning both retroactively and prospectively. For the following reasons, the Court denies Ms. Browning's motion for summary judgment.

**Procedural Background**

On December 9, 2005, Ms. Browning filed a Title II application for disability insurance benefits alleging her disability began on April 30, 2003. The claim was denied initially on August 23, 2006, and upon reconsideration on November 8, 2006.  Ms. Browning filed a written request for a hearing, which was held on March 26, 2009. At the hearing, Ms. Browning amended her disability onset date to November 25, 2005. Ms. Browning appeared and testified at the hearing, as did her niece Shawntaneese Lull.  Two other witnesses testified at the hearing: Ashok G. Jilhewar M.D., a medical expert, and Cheryl R. Hoiseth, a vocational expert. At the hearing, Ms. Browning was represented by counsel.

Administrative Law Judge ("ALJ") Kenneth E. Stewart issued a decision finding Ms. Browning not disabled and denying her benefits on June 25, 2009. Specifically, the ALJ found that Ms. Browning (1) had not engaged in substantial gainful activity since November 25, 2005; (2) had the following severe impairments: congestive heart failure with bypass and defibrillator and diabetes mellitus; (3) did not have an impairment or combination of impairments that met or medically equated to one of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) had the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a); (5) is capable of performing past relevant work as an order clerk and as a night dispatcher; and (6) has not been under a disability since November 25, 2005. Ms. Browning requested a review of that decision, which was denied by the Appeals Council on September 13, 2010. Consequently, the ALJ's decision became the final decision of the Commissioner of Social Security. Ms. Browning filed the instant action on November 4, 2010, seeking review by this Court pursuant to 42 U.S.C. §§405(g) and 1383(c).

**Factual Background**

*1. Hearing Testimony*

Ms. Browning testified on her own behalf that at the time of the hearing she was 52 years old and had a high school education. Her medical problems include: coronary artery disease with a defibrillator implant, uncontrolled diabetes, peripheral neuropathy, and COPD. (R.7). The day after Thanksgiving 2005, Ms. Browning went to see her doctor because her feet were severely swollen. (R. 33). She was put in the hospital and a week she had surgery for an internal defibrillator. (R. 34). After two weeks in the hospital, Ms. Browning said she just lay around the house. (Id.) She testified that she experiences severe fatigue, swelling and numbness in her feet and ankles as well as pain in her legs and at the surgical site of her defibrillator. (R. 33, 35, 36,

38, 40, 41, 42, 43). Ms. Browning was taking water pills (diuretics), which caused her to have to frequently urinate. (R.40). She has trouble sleeping due to having to use the bathroom at least twice during the night. (R. 46). Ms. Browning further testified that her bedroom is in the basement and she only uses the stairs to go to bed at night and when she gets up in the morning due to her fatigue. (R. 52). She also testified that she has trouble eating since she lost her teeth in 1998 or 1999 and cannot afford dentures (R. 50). Ms. Browning has dyslexia and testified that she "worked around" it and was in the top 50% of her high school class. (R. 51).

Ms. Browning testified that, prior to her hospitalization in November 2005, she worked part-time at the Wild Bean Café for BP. She worked four or five days a week for five or six hours, standing the entire time. (R. 22). Her job was to make coffee and sandwiches. (R. 23). There was only minor lifting. (Id.) Prior to working for BP, Ms. Browning testified that she had been night shift manager at White Castle, where she supervised the cleaning of equipment and took care of the financial transactions. (R. 24, 25). She was standing for most of her shift. (R. 25). There was some lifting involved with the job, at most 10 pounds. (R. 26). Ms. Browning also testified that she worked part-time for a cab company; first as a driver and then in the office answering the telephone and as a night dispatcher. (R. 27). While a cab driver, there was some occasional lifting involved, but as night dispatcher her job was sedentary and did not require any lifting. (R. 27, 29).

Ms. Browning's niece, Shawntaneese Lull, testified that Ms. Browning has neuropathy, tingling in her feet, and that her blood sugars are as high as the 500s (R. 48). Ms. Lull lives with her aunt and testified that she gets very tired from the diabetes and congestive heart failure. (R. 49). Ms. Lull also stated that Ms. Browning elevates her feet in the afternoon due to the swelling and she encourages Ms. Browning to get up and move around. (R. 48, 49).

Cheryl Hoiseth, a vocational expert ("VE"), testified to the exertional and skill levels of Ms. Browning's prior employment. The VE testified that Ms. Browning's White Castle and BP jobs were semi-skilled, light exertional level. (R. 32). Her job at the cab company was compared to an order clerk in the Dictionary of Occupational Titles, that sedentary with an SVP of 3.

Dr. Ashok Jilhewar, a board certified internist, testified as a medical expert. (R. 52). He testified that Ms. Browning was in clinical (inaudible)[1] congestive heart failure during her hospital stay from November 25, 2005 to December 6, 2005. (R. 55). She had a three vessel coronary artery disease, though the stenosis did not require intervention. (Id.) No specific intervention was done for the coronary artery disease, but because her ejection fraction was only 15% she was predisposed for sudden cardiac (inaudible) from the ventricle artery fibrillation or a cardiac arrhythmia. (Id.) Ms. Browning had an intrathoracic cardiac defibrillator implanted on December 2, 2005. Dr. Jilhewar testified that at the time of the hearing Ms. Browning was was 5'7" and weighed 197 pounds, giving her a body mass index of 31.5 (R. 56-57). Dr. Jilhewar opined that Ms. Browning met a congestive heart failure listing of 4.02b for a period of less than 12 months beginning November 25, 2005, and continuing through March 31, 2006. (R. 57).

Dr. Jilhewar further testified that there was documentation of Ms. Browning's diabetes, but found no documentation of other impairments. (R. 58). He noted that chronic obstructive pulmonary disease (COPD) is mentioned in the records, but her chest x-ray from her hospitalization did not show hyperinflation and there were not pulmonary function tests in the documents so he could not say whether she had COPD or what effect it might have on her residual functional capacity. (Id.). Dr. Jilhewar also testified that the diuretic Ms. Browning

---

[1] Indicates where portions of the record were inaudible.

takes could contribute to her fatigue if it is not the correct dosage. (Id.) He also testified that Ms. Browning's elevated blood sugar levels could also contribute to her fatigue. (R. 59).

## *2. Medical Records*

Ms. Browning's primary care physician Dr. Douglas Ambler wrote a letter that stated Ms. Browning has underlying coronary artery disease and a dilated cardiomyopathy. (R. 203). The letter states that Ms. Browning also has COPD and type 2 diabetes mellitus. (Id.) He placed her prognosis at fair and her overall physical functioning at poor. (Id.) On November 26, 2005, Dr. Ambler completed a report following an examination of Ms. Browning, recommending inpatient examination. (R. 248-250). Her chief complaint was lower extremity edema. (R. 248). He noted her past history as congestive heart failure, poorly controlled type 2 diabetes mellitus, hyperlipidemia, and hypertension. (Id.) Dr. Ambler also referenced Ms. Browning's "cough secondary to heart failure and maybe also some underlying bronchospasm, possibly chronic obstructive pulmonary disease." (R. 250).

Cardiologist, Dr. Maria Rosa Costanzo, began treating Ms. Browning in the hospital. Her records indicate that on January 23, 2006, he reported that Ms. Browning has good days and bad. (R. 204). On bad days she feels weak and unmotivated so she stays in her chair watching television. (Id.) At that time she denied any orthopnea or edema. (Id.) Dr. Costanzo recorded Ms. Browning's past history as dyslexia and diabetes and her past CV history as CAD, cardiomyopathy, dyslipidemia, hypertension, implantable cardioverter defibrillator and Medtronic. (Id.) Her assessment was ICD and congestive heart failure. (Id.) On December 12, 2005, Ms. Browning presented to Dr. Costanzo with a cough, dyspnea on exertion, fatigue and is a functioning class III. (R. 209). Ms. Browning had elevated blood pressure and decreased breath sounds at the bases bilaterally. (Id.) Dr. Costanzo also noted trace pedal edema bilaterally. (R.

210). On February 3, 2006, Dr. Costanzo completed a medical evaluation for the Illinois

Department of Human Services, which gave a complete diagnosis of "Ischemic cardiomyopathy

with EF of 15% per angiogram of 11/30/05; congestive heart failure; ICD implantation." (R.

213).

**Legal Standard**

*1. Standard of Review*

The ALJ's decision becomes the final decision of the Commissioner of Social Security, if

the Appeals Council denies a request for review. *Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir.

2009). The "findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive." 42 U.S.C. §405(g). The ALJ's decision is subject to

judicial review by the district court. *Skarbek v. Barnhart,* 390 F.3d 500, 503, 105 Fed. Appx. 836

(7th Cir. 2004). A court will affirm the decision of the ALJ so long as he applied the correct

legal standards in reaching his decision and there is substantial evidence in the record to support

the findings. *Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002). Substantial evidence is

sufficient if reasonable minds would accept it as adequate to support the conclusion. *Liskowitz v.

Astrue*, 559 F.3d 736, 739 (7th Cir. 2009)(citing *Richardson v. Perales*, 402 U.S. 389, 401, 91

S.Ct. 1420, 28 L.Ed.2d 842 (1971)). If the ALJ's decision has adequate support, the reviewing

court will affirm even if reasonable minds could differ concerning whether the claimant is

disabled. *Simila v. Astrue,* 573 F.3d 503, 513 (7th Cir. 2009). The ALJ must minimally articulate

his analysis so the Court can conduct a meaningful review. *Villano v. Astrue*, 556 F.3d 558, 562

(7th Cir. 2009).

*2. Disability Standards*

In order to qualify for disability benefits, Ms. Browning must be found "disabled" under the Social Security Act ("the Act"), 42 U.S.C. §301 *et seq.* *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). "Disability" under the Act, means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to last for a continuous period of not less than 12 months. *Briscoe*, 425 F.3d at 351; 42 U.S.C. §§423(d), 416(i), and 1382c.

The ALJ uses a mandatory five-step sequential analysis to evaluate a disability claim. *Simila*, 573 F.3d at 512; see also 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). The five-step analysis requires the ALJ to examine: (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the listed impairments, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant can perform her past work; and (5) whether, given the claimant's RFC, age, education, and work experience, the claimant is capable of performing work in the national economy. *Simila,* 573 F.3d at 512-13. To determine whether the claimant is able to perform her past work or is capable of performing other work (steps four and five), the ALJ must assess the claimant's residual functioning capacity ("RFC"). *See* 20 C.F.R. §§ 404.1520(e), 404.1560(b)-(c), 416.920(e), 416.960(b)-(c). A claimant's RFC is the most the claimant can still do despite her limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ must assess a claimant's RFC based on all the claimant's impairments and all the relevant evidence in the record. *Simila*, 573 at F.3d at 513; *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). A finding of disability requires either an affirmative answer at step three or that the claimant is unable to perform any work in the national economy. *Briscoe*, 425 F.3d at 352. The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.*

**Analysis**

      Ms. Browning asserts three arguments in support of her request for summary judgment: (1) the ALJ erred in his assessment of which of Ms. Browning's impairments are severe because he rejected the treating physician's diagnosis of chronic obstructive pulmonary disease (COPD) without substantial evidence; (2) the ALJ erred by not fully exploring the limitations created by Ms. Browning's severe and non-severe impairments in combination; and (3) the ALJ erred in his credibility determination because he did not account for Ms. Browning's entire list of limitations and did not give any weight to witness testimony. The Court will address each alleged error in turn.

      Ms. Browning argues that the ALJ improperly relied on the retained medical expert's opinion when evaluating the weight to give Ms. Browning's COPD.  Ms. Browning analogizes *Gudgel v. Barnhart*, wherein the plaintiff's family physician and consulting neurologist diagnosed the plaintiff with post-polio syndrome, but the medical expert testified at the hearing that there was no support in the medical records for the diagnosis. 345 F.3d 467, 468-69 (7th Cir. 2003). The Seventh Circuit remanded the case to the agency, stating "[a]n ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Id*. at 470. Ms. Browning alleges that the ALJ here rejected Dr. Ambler's diagnosis of COPD, without proper support from the record.  This Court disagrees.

      *Gudgel* is inapposite. In *Gudgel*, the ALJ did not explain how the evidence in the record contradicted the treating physician's diagnosis of post-polio syndrome as the underlying source of the plaintiff's pain, arthritis, and bone deterioration. *See id*. In that case, the ALJ relied on the opinion of the medical expert that did not identify any inconsistency between the diagnosis and

the medical report and the medical expert's own opinion was inconclusive. *Id.* Here, in giving less weight to the COPD referenced by Ms. Browning's treating physician, the ALJ stated the "medical expert found no evidence of significant pulmonary disease, as the claimant has never been diagnosed with a pulmonary condition nor treated for one." (R. 14). The medical records support this conclusion. Although Dr. Ambler referred on more than one occasion to Ms. Browning having COPD, there is no record evidence that he treated her for COPD or other pulmonary problems and the record shows that it was not among Dr. Ambler's primary concerns. Indeed, Dr. Ambler is not entirely unequivocal as to Ms. Browning having COPD. (See R. 250).

The ALJ did not err by relying on Dr. Jilhewar's opinion that COPD as a severe impairment lacked support in the medical records. The regulations instruct ALJ's that state agency reviewing consultants and medical experts are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. §404.1527(f)(2)(i). Even Dr. Ambler's assessment on February 3, 2006, two months after surgery is not inconsistent with the ALJ's determination that Ms. Browning is capable of semi-skilled sedentary work. (See R. 217-219). In that report, Dr. Ambler noted Ms. Browning as being able to lift no more than 10 pounds at a time during an 8-hour day, five days a week. (R. 219). He also evaluated her sitting and turning at 20% to 50% reduced capacity, which is not inconsistent with sedentary work (*i.e.,* sitting 80% of the workday with periods of standing or walking totaling no more than two hours in an eight-hour day.). (R. 219, SSR 83-10).

Additionally, Dr. Costanzo, Ms. Browning's cardiologist, never diagnosed COPD, and Ms. Browning testified that the COPD only caused fatigue. (R. 49). Fatigue is Ms. Browning's primary complaint and reason for being unable to work. Fatigue an impairment that certainly was considered by the ALJ. This Court finds that the ALJ did not reject Dr. Ambler's diagnosis

of COPD solely on the basis that Dr. Jilhewar opined that the medical records did not contain testing or other medical evidence of COPD. There was ample support in the record for the ALJ to conclude that COPD was not among Ms. Browning's chief complaints since she was not treated for any pulmonary condition and therefore did not constitute a severe impairment under the Act. Moreover, Ms. Browning does not indicate in what manner consideration of COPD would change the assessment of her level of impairment. *See Shinski v. Sanders*, 129 S.Ct. 1696, 1706 (2009)(burden is on the plaintiff to show harmless error). Thus, there was substantial evidence in the record to support the ALJ's decision and he at least minimally articulated his reasons for giving no weight to Dr. Ambler's COPD diagnosis. *See Skarbek v. Barnhart,* 390 F.3d 500, 503 (7th Cir. 2004).

Next, Ms. Browning asserts that the ALJ erred in assessing her residual functioning capacity because he did not consider her COPD, dyslexia, hypertension or obesity either individually or in combination.

An ALJ is required to consider impairments a claimant says she has, or about which the ALJ receives evidence. 20 C.F.R. § 404.1512(a). With respect to plaintiff's dyslexia, the ALJ noted that she worked with the condition successfully prior to her alleged onset date. (R. 14). Ms. Browning does not indicate how her dyslexia, now will prevent her from doing similar work to her previous jobs. Ms. Browning did not testify that to any difficulty in her previous employment resulting from dyslexia. When asked if there was any way she could return to her job as a cab dispatcher, Ms. Browning mentioned only frequent urination as a problem, not any other ailment including dyslexia. (R. 40). Thus, there is nothing in the record, medical or otherwise, that would support the ALJ giving greater weight to dyslexia.

With respect to the other impairments that Ms. Browning claims the ALJ failed to adequately consider, Ms. Browning argues that her COPD, hypertension and obesity could increase the pain and fatigue caused by her heart disease and diabetes. However, any remand for explicit consideration of these conditions would not affect the outcome of the case. *See Keys v. Barnhart*, 347 F.3d 990, 994-95 (7th Cir. 2003) (applying harmless error review to ALJ's decision). Ms. Browning does not specify how these conditions would affect her work in a way not already considered by the ALJ. Instead, she speculates that these conditions *could* exacerbate the pain and fatigue caused by her heart disease and diabetes. The ALJ here, as in *Skarbek v. Barnhart,* 390 F.3d 500, 504 (7th Cir. 2004), adopted the limitations suggested by the specialists and reviewing physician, who were aware of her COPD, hypertension and mild obesity. Accordingly, the ALJ factored in Ms. Browning's pain and fatigue of varying degrees by limiting her residual functioning capacity to work that is of the sedentary exertional level.

Lastly, Ms. Browning asserts that the ALJ erred by not giving sufficient credibility to her claimed need to elevate her legs. Since the ALJ is in the best position to examine the claim of disability before him, the ALJ's determination on credibility will be affirmed unless it is "patently wrong." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2006). The Court will not scrutinize the ALJ's decision for contradictions, but will give it a common sense reading. *Shramek v. Apfel,* 226 F.3d 809, 811 (7th Cir. 2000). The Court will affirm the decision of the ALJ as long as it builds a "logical bridge between the evidence and the result." *Id*.

Here, the ALJ explicitly considered the testimony of both Ms. Browning and her niece Shawntaneese Lull. (R. 16). The ALJ specifically noted that Ms. Browning testified to needing to prop her legs up during the day and that her niece agreed that Ms. Browning elevates her feet. The ALJ compared that testimony with the medical records and found no medical confirmation

of her need to elevate her feet. (R. 16). The ALJ therefore determined that the limitation to sedentary work would accommodate a limitation on prolonged standing or walking. (Id.) Ms. Browning has not put forth any evidence to suggest that the ALJ's reasoning is patently wrong, and this Court does not find that it is patently wrong.

**Conclusion**

Based on the foregoing, this Court finds that the ALJ's decision was supported by substantial evidence in the record and Ms. Browning is not entitled to summary judgment. The motion is denied and the decision of the Commissioner is affirmed.

IT IS SO ORDERED.

Date:   10/20/2011

Entered: _____

Sharon Johnson Coleman